yes thank you your honor uh and good morning and may it please the court it's seth waxman on behalf of monsanto we are indeed the appellant in this case and i would like to i aspire to reserve four minutes for rebuttal um the trial in this case never should have been held because the claims are preempted and because the causation opinions that plaintiffs experts offered did not pass a former the claims are preempted because epa has repeatedly found that exposure to roundup and other glyphosate herbicides does not cause cancer in humans it has repeatedly determined that therefore no cancer warning is appropriate and it has repeatedly approved and therefore directed that labeling for roundup does not contain any such warning over the decades epa's study of the carcinogenic potential of glyphosate and its formulations has been nothing short of encyclopedic it has consistently concluded that they do not pose a risk of cancer in humans and it has approved 45 versions of the roundup label just last year epa notified monsanto and other manufacturers that a warning of the kind that plaintiffs seeks would be false and misleading and therefore violate federal law as to daubert the district court permitted before you move to daubert mr. 2 which says in no event shall registration of an article be construed as a defense for the commission of an offense under this chapter registration of a pesticide shall be prima facie evidence of pesticide its labeling and packaging comply with the registration provisions but that's it yes your honor um first of all i would say that this case does not involve a proceeding that monsanto has committed an offense under this chapter this this is a civil tort suit brought under california state law alleging a violation of the fair cop fair trade practices law and california common law second of all we are not here contending that preemption exists because glyph because roundup was registered by the epa preemption follows here express preemption follows from the precise language of what is called the uniformity clause that is 136 vb which says that states may not impose requirements for labeling or packaging in addition to or different from those required under this subchapter now there is no question in this case that the epa has having determined that glyphosate and roundup and other glyphosate formulations do not cause cancer it has required but but on the other hand it seems to me if you're going to go in that direction don't we look at bates versus dow agro sciences which says yes but you've suggested that the packaging or labeling requirement that is in addition to or different from those required under fibra they cannot impose such a requirement but it also says that the requirement need not be phrased in identical language and it also says that it's parallel requirements meaning that a violation of the state law is also a violation of fifra so it seems to me that the argument is there is nothing which california has done which is not fully consistent with the requirements of fifra so your honor i guess i have several things to this case imposes a labeling requirement on monsanto it finds monsanto liable for not including a warning that the epa has determined is false and misleading and monsanto hat is prohibited as a matter of fifra from putting that warning on the label a without epa's advanced and that's the the question what bates looks at and if anything regal the subsequent decision in regal versus medtronic makes absolutely clear this was the basis this is the only basis on which justice stevens separately concurred in regal the point is but the problem with regal is that the mda expressly preempts the claims challenging the safety and effectiveness of the device and the mda doesn't have a provision which is like 136 af2 and that's why i put it in the record here so uh the language of the uniformity clause which is the clause in fifra that relates to labeling requirements is almost precisely identical to the medical device amendments clause it both of them prohibit states from imposing regulations for labeling in addition to or different from requirements that the federal agency has imposed under the relevant statute and i think i i acknowledge uh the premise i think of your honor's question judge smith that there is language in in baits that seems to that could be read to suggest that when one is looking at parallel requirements one should be looking one perhaps could be looking at the the broad language at a high at a very high level the language of state law versus federal law now we know for a fact that that cannot be true because that would mean that if california simply adopted by incorporation or adopted in heck verba the language of fifra as a matter of state law that it could require monsanto to to use a label that is different from the one that the epa has determined monsanto must use and i think the best evidence of that judge smith is in the court's several times that any state law or rule that imposes a different or broader labeling obligation is preempted it gave a very specific example it said therefore if a state cannot hold a manufacturer or be liable for a warning label that says quote warning rather or caution caution rather than when the epa has mandated that the appropriate level of warning is cautioned and it seems to me that that demonstrates that the correct level of requirement that one has to look at in order to ensure that there is in fact uniformity as the subsection suggests is what requirement what has looked at what it has what has it determined and what requirement labeling requirement has it placed on the manufacturer and i asked about uh yes can i ask about the 2009 letter or excuse me the 2019 letter that yes your honor uh two questions number one uh to what extent can we even consider that because of the timing of it meaning perhaps that has some application going forward but here you've got an issue where uh the roundup at it uh the specifically an issue had been stopped being sold in 2012 in this case uh and and at that point epa hadn't made that determination and secondly um what do we do with it doesn't seem to have the binding force of law that is normally required yes so uh let me talk first about the timing and i hope i hope i won't forget to also address the binding nature of it as the timing i think the relevant questions are you know the question may be slightly different although i think the answer is the same with respect to express preemption and impossibility preemption as to express preemption i think it's there's an interesting logical question about whether why a court in determining whether monsanto was expressly preempted from including any warning other than the warning that the epa required it to should take account of something that occurred after uh mr hardeman you know was injured and brought suit and all i can say here is that the supreme court uniformly and i you know will point the court to the this court to the in merc last term where in determining express preemption questions it frequently looks at pronouncements by the agency that exist at the time and that's probably because the preemption provision the uniformity provision is stated in the present tense in any event as the district court found here otherwise found here it wouldn't matter because there is no question that as of 2012 when mr hardeman contracted nhl the agency was had determined that an appropriate label should not include a cancer warning and prohibited the company from putting it on well i that i wanted to ask about that because did they actually prohibit the company from putting it on or i mean basically this warning label it's different than fda and i think that's one of problems uh that's at issue here uh is that the epa regulatory um practice is not the same where they don't fda doesn't fda tells you what you have to put on the label here you have the company's proposal label you don't have to have uniformity in the labels so i'm not sure that that means prohibited this previously so with with all due respect judge nelson i think um you know having been a veteran and a victim of both murk and bates in the supreme court i think i can tell you pretty authoritatively that what the fda does with respect to its labels and what months what the epa does under fifra is the same that is the manufacturer must submit a registration application the registration application has to include all sorts of tests and information and it also must include a proposed label and the proposed label is both in the fda context and in the epa context the subject of a back and forth with the regulatory agency with the regulatory agency ultimately concluding what label must be used and so my assertion that in 2012 monsanto was prohibited by federal law from putting a cancer warning on flows from number one the epa's encyclopedic evaluation of the science number two its determination that glyphosate exposure to glyphosate in its formulations do not cause cancer in humans and its requirement as a matter of statute and regulation that the manufacturer use only the label that is approved except with respect to technical you know non-substantive uh alternatives now if i can just go to the the implied preemption analysis and the timing and then talk about why the in any event the august 2019 letter is binding and has the force of law with respect to implied preemption there is no doubt that the cases permit all evidence that is available at the time in order to evaluate whether it would have been impossible for the manufacturer to change the label without violating federal law now this and you and therefore at a minimum the august 19th letter is a capstone on the agency's prior multiple determinations about the non-cancerous potential of glyphosate and its formulations it that the impossibility preemption analysis question is whether a company can be liable for not doing something that it cannot do without epa approval and that epa has indicated over and over again it wouldn't improve that's that's the textbook case for impossibility preemption now as to the binding nature in and of itself of the august 7th 2019 letter first of all our none of our argument depends on this being binding in and of itself but it plainly is the supreme court has indicated in merc that whether something is binding or not is whether it has the force of law and the force of law means that it was quote and i'm quoting from merc which itself was quoting from the city of new york versus the fcc and new york versus firk was it an agency action taken pursuant to congressionally delegated authority now here there is no question i mean first of all this letter was issued and i'm sure mr bright bill who's representing the united states and epa can explain this more authoritatively than i can but the record indicates that what happened was after prop 65 was passed in california a number of glyphosate formulated manufacturers wrote to epa and said can we engage in defensive labeling can we put somewhere on the label a reference to prop 65 uh the there was one and the epa faced a whole raft of other applications and it decided to take a a substantive look at this having done it with respect to those pending applications and the applications that had mistakenly granted it issued the letter pursuant to its statutory authority and mandate to enforce the misbranding prohibition under federal law i mean this is i'm not i'm not arguing that the bennett versus spear test exactly equates with preemption but this is a classic example of an agency doing something faced with requests makes a ruling and issues a notification to all manufacturers that you may not add this warning and if you already have you must take it off and send us copies of the label that you are now going to revert to is that inconsistent would we if we followed that argument would we be issued issuing a ruling that would be inconsistent with fellner from the third circuit the fellner in the third circuit suggested that these informal letters that don't go through adjudicate the adjudicatory process or rulemaking process don't have the force of law um before i answer the question can i just i i know i only have three minutes left on you know what i think we're going to give you some time because i at least i have some questions about okay yeah um i just didn't want to lose it by default i understand i appreciate it yeah so you know i i don't think that fellner uh counsels a a different result there is no question i mean there is a an un i mean i have argued three final agency action cases just since covet started involving letters and in one case an email from the agency and there is no question that there are some forms of informal communication that don't have the force of law and you know this court has previously in i think one or two cases whose names i have forgotten concluded that it was it didn't have the binding force of law because the agency wasn't acting pursuant to a its authority and its mandate the quest there is certainly nothing about the fact that an agency determination is issued by letter that precludes it from having the force of law i mean in murk itself the supreme court's decision last term in murk it gave examples of the kinds of things that are that have the force of law because they were taken pursuant to congressionally delegated authority and one of them is a letter to the registrant and so there's no there's no categorical prohibition the question of whether it has the force of law is the substantive question of whether it represents the agency's genuine and non-tentative conclusion whether it has legal and real world consequences for the regulated entities and whether in doing so the agency was acting pursuant to congressionally delegated authority and here i submit there's no not even an argument that that's not true can we talk a little bit our questions uh mr waxman have taken you uh away you said you were also going to talk about dobbert um and the expert testimony i just have one question about that and that is did the district court apply a different standard under dobbert for your experts your clients experts as they did for the plaintiffs experts i don't think so your honor the question in the daubert case of course was whether their experts offered sufficiently reliable conclusions that they passed the gatekeeping standard and the the district court was refreshingly candid about how it evaluated that standard if i can direct the court to pages 36 and 37 of the excerpts of record here is what i mean there are several several instances but here's the best instance of how judge chabria perceived the relevant daubert gatekeeping test in this circuit he said and i'm quoting under a strict interpretation of daubert the experts inability to differentiate those who developed nhl because of exposure to round up from those who would have developed it anyway perhaps would be the end of the line at least without much stronger epidemiological evidence but in the ninth circuit that is clearly not the case district courts in this circuit must be more tolerant of borderline expert opinions than in other circuits district judges must account for the fact that the ninth circuit permits a wider range of expert opinions arguably much wider than other circuits that is the standard he applied to our daubert challenge to their expert testimony and mr waxman can i can i ask you on that because i agree with you and i have some concern about some of the ninth circuit case law but what can we as a panel do about that because i if we if you take the district court at face value then we have no choice it seems to me under an abuse of discretion standard particularly of of affirming the district court um and i i mean i don't see a way it's a pretty tight minefield here for you and i'd be interested in how you're gonna you know get through that and say we can given the current layout in ninth circuit law murk and and the other cases or um merrill and the other cases uh how how do we get there so i think yes uh your honor i think at a minimum this court needs to state quite clearly that it has not diverged from all the other circuits in the daubert standard that is applied i mean i think this court's en banc opinion in the baraband case and in daubert too uh that is daubert after remand this court made clear that the gatekeeping function is a real one and that courts cannot allow unreliable or or or other irrelevant or unreliable testimony to go to the jury on a theory that well cross-examination can handle this so i think in the first instance it's terribly important for this court to unequivocally disabuse district courts who may think that the daubert standard is different here than in other circuits as to why reversal is required there's a lot can be said about daubert about this the testimony in this case but let me just focus the court's attention on the the expert testimony on specific causation that is not whether in principle in general there is some association between glyphosate exposure or roundup exposure and and non-hodgkin's lymphoma but whether the court can whether an expert can properly opine that it was more likely than not that mr hardeman's cancer was the result of uh mr hardeman offered one expert witness dr weisenberger on specific causation that i want to talk about the the failing of that witness and why it fails the gatekeeping standard and how in light of that the district court could have concluded that it passed the gatekeeping standard that witness mr mr why dr weisenberger said that he was able to the bit the major problem in this case is that 70 or more percent of all nhl cases are idiopathic that is they and i wanted to address that specifically because isn't that the same thing we had in wendell and that's why i'm struggling and so i mean if we take wendell and and messick how i mean those seem that that was a case where the district court precluded the excluded the evidence below and they were so it strikes me that you know we've got a lot of cases where the district courts exclude and then get reversed and i'm sympathetic to the district court here who said you know i i've learned my lesson we like district courts who learned the lesson and uh whether we've got a writer or not before he seems to have done the right thing here so uh let me address wendell which was a case in which 70 plus percent of the cases were idiopathic just like here and then explain why the district court erred in permitting dr weisenberger to offer his specific causation testimony we i have we are on all fours with wendell there's no question that in evaluating the reliability of an expert's testimony the court has to take account of diseases that are not well studied and diseases that are in fact well studied in wendell the disease was so rare that there were fewer than 200 cases worldwide the expert in the case had diagnosed the ideology had both diagnosed and treated more patients with this disease than 99 percent of all oncologists he testified consistent with and this is very very important judge nelson and it's true also of messick he considered he testified that consistent with the published the chemicals administered in wendell made it between three and 270 times more likely that the the plaintiff would actually uh fall to this particular very rare disease and that that opinion and i'm quoting this court's this court's opinion in wesson in wendell was accepted by quote the entire medical community now here we have a case in which the plaintiff's expert dr weisenberger conceded number one that mr hardeman could have developed cancer without exposure to glyphosate and in fact the in his opinion the amount of exposure sufficient to unlike in wendell where the disease was incredibly rare and therefore only lightly studied glyphosate is the most studied and evaluated uh pesticide in history the the epa's um the epa's website lists and it has considered 4 200 studies and references to glyphosate and cancer and the the fact that and and miss dr weisenberg also testified that he could not identify any not one peer-reviewed published article saying that it was generally accepted that glyphosate causes his type of cancer and he acknowledged that he had never before in his clinical practice ever identified glyphosate as a cause of a patient's cancer now what is a result counsel as a result of that i think you're describing the cross-examination right uh yeah i i believe so yeah as a result of that the jury could have disregarded that expert's testimony and that is that is always the case judge hawkins but i'm talking here about cross examination at the daubert hearing and whether or not in light of all those facts i was i was addressing judge nelson's question about why isn't this do you have a it doesn't wendell state the the state of the circuit law and why it didn't and what the difference was i do want to go to because i i take your honor's question to be quite correctly whether or not we have carried our have gone to the jury under the gatekeeping function and i want to make two points he testified that he was able to rule out idiopathy to basically find that it was notwithstanding 70 plus percent of the cases are undiagnosable there's no ideology that roundup was more likely than not the call more likely than not is the standard the cause of mr hardeman's non-hodgkin's lymphoma pointing to the high level of exposure that mr hardeman had over the years number one the district judge found as fact that dr weisenberger was making his calculations based on an estimate of exposure that exceeded mr hardeman's own testimony about his exposure number two in calling this high exposure he pointed to two studies the erickson study in sweden and the mcduffie study from from uh canada in neither of those studies when uh a count was taken of other pesticides the subjects were exposed to was there any statistically significant association between exposure to round up and otherwise and dr weisenberger entirely failed to account for that fact and for the many many many other studies that showed no association now he's the district judge understood oh he also said that mr hardeman's exposure was beyond the exposures of those studied in the two studies erickson and mcduffie that he relied on the district judge elsewhere found that that was not true the level of mr hardeman's exposure was in the heartland of the exposures of those subjects that had been studied in mcduffie and erickson so how could the district judge having found that dr weisenberger's predicates for his opinion were not were not supported how could he have found that that the testimony should be admitted he did so by stating that there are different ways you know the fact that the fact that a disease is is overwhelmingly idiopathic doesn't defeat the ability to demonstrate specific causation in this case idiopathy was overcome because of the quote robust association between exposure to glyphosate and the development of cancer to our non-hodgkin's lymphoma that was that determination that was the basis for his ruling that mr hardeman's expert had barely skated over the line of a reduced daubert test and the language i quoted you from pages 36 and 37 do relate to his determination on specific causation what he what he had previously said first of all elsewhere in his specific causation opinion was that the the level of association what he called weak and too equivocal between exposure to glyphosate and the development of non-hodgkin's lymphoma in general in other words the determination that he made at the general causation test phase which he said was so weak that under a strict interpretation of daubert wouldn't even have satisfied general causation he then said in his general causation opinion given how close the question is at the general causation phase the plaintiff appears to face a daunting challenge at specific causation phase but he issued a brief opinion on specific causation that relied on a conclusion about the robustness of the general association between exposure to glyphosate and the development of non-hodgkin's lymphoma that was directly contrary to what he had found in his general causation opinion that was error that was an abusive discretion and he made no secrets about the fact that if he had missed any event if he had misapprehended the rigor of the gatekeeping function that the ninth circuit applies he would have decided the case of the daubert questions otherwise well thank thank you uh mr waxman we'll sorry for throwing it on no look it's a it's a we knew coming in it was going to be uh a complicated case unless there's other questions we'll we'll give you a little bit of time on rebuttal and we'll give uh we'll still give five minutes to uh mr brightville thanks your honor and thank you your honor may it please the court jonathan brightfield from the environment natural resources division on behalf of the united states your honor this is really the textbook case of what congress intended to preempt and the supreme court identified as a clear example of what is preempted by fifra's prohibition of state law requirements for labeling or packaging in addition to or different from those required by epa well how can you i'm sort of surprised that we can you can say it's a textbook case when and then judge smith already walked through some of this debates was i mean effectively a unanimous opinion rejecting preemption and it just seems to me that fifra operates differently than that than the uh you know than in the fda context where preemption is more likely found respectfully your honor i think you need to read deeper on base v dow because there are really two halves of the base v dow decision there's a first half of the decision that relates to traditional negligence claims and express warranty claims and then there is a second half of the decision that relates to failure to warn claims your honor and recall in the second half of the decision the supreme court doesn't say that there is no preemption it actually remands back to the fifth circuit after articulating a test of sorts now it's it's not the clearest of all decisions in and of itself but there really is a two-part test that's articulated in the base v dow decision at 453 and when they're providing the instructions on remand it says quote we emphasize that a state law labeling requirement must in fact be equivalent to a requirement under fifra in order to survive preemption one and this is really element one of the test for example when the court of appeals to determine that the element of falsity in texas common law definition of fraud imposed a broader obligation than fifras requirement that labels not contain false or misleading statements that state law cause of action would be preempted now they want you to stop there but the supreme court goes on and makes clear that the actual requirement that is being articulated as a function of the state law duty failure to warn is also critical to the analysis because the court reads all goes on to say um and this is really element two state law requirements must also be measured against any relevant epa regulations that give content to fifra's branding standards and they give the example of quote a failure to warn claim alleging that a given pesticides label should have stated danger instead of the more subdued caution would be preempted because it is inconsistent with 40 cfr 156.64 and that's exactly what we have here your honor is what what what that portion of the regulations do in 40 cfr point 156.64 do is they articulate various tiers of warning that epa is going to then associate with fifra labels and what happens here what and what happens in the context of a fifra registration is an application comes in is reviewed and a determination is made as to what level of toxicity is supposed to be associated with a given left label under 40 cfr 156.64 toxicity category one danger toxicity category two warning toxicity category three tox caution toxicity category four no signal word whatsoever and and what happens here is that that the epa has determined that there is actually no signal word that's supposed to be this is actually toxicity four with respect to any potential cancerous implications of glyphosate your honor there is an actual uh caution warning on the label that comes by virtue of other toxicity implications for more acute like if you drink it your honor uh as a question yes no i counsel pardon me for interrupting you but i noticed the clock it's like said it's 20 minutes or something like that i think we've got another minute here for mr brightville and then we'll turn over to okay so so what's critical to understand though is that under 156.64 b it's a regulatory requirement in no case may a product one very signal word reflecting a higher toxicity category than indicated by the route of exposure of highest toxicity determined by epa of b3 in no case may a product bear different signal words on different parts of the label and that is what you have here your honor because what the theory of mr hardeman was from his complaints all the way through his client counsel's closing statement at our at closing argument was that the label should have had a warning about the cancerous implications of glyphosate your honor a warning a signal word so to speak your honor that epa has determined is not appropriate and actually would violate and does violate the epa regulations as well as the registration determination to have that on the label your honor thank you uh mr brightville uh appreciate your argument and we'll turn uh now to uh mr wool and let's put 20 minutes uh on the clock and i'm sure we went over so we're not going to be beholden to it but uh we'll have 20 minutes for uh both uh the california and that we can't see mr waxman i i'm assuming mr waxman's just turned his camera on okay all right so i'm just trying to make sure i didn't see quite as a big a deal when the government was arguing but i do see it quite a big deal of mr wolf is arguing may i please report david wall on behalf of edmund hardeman monsanto's theory of the case is that epa's approval of roundup's label and the letter that was issued uh that was not issued pursuant to any statutory authority preempt hardeman's common law claims under bates versus dow and the plain text of tempera this cannot be the case i'd like to start with one overarching point that i hope will simplify the court's analysis which is that this case is not about glyphosate by itself this case is and always has been about roundup as formulated which contains an active ingredient of glyphosate along with surfactants that allow glyphosate to stick to and penetrate the surface of plants and make it more toxic when it when humans are exposed now doesn't that actually hurt your argument though because i mean seems to me that all of the evidence here concerns glyphosate i i that all everything else that you're talking about was that actually included or um the expert reports that that was your honor and let me kind of go over the categories of expert testimony um that was introduced to trial so the experts testified about epidemiological studies that involve formulated roundup they testified about toxicology studies that involve only the active ingredient glyphosate and then cell studies that evaluate the mechanism by which uh glyphosate or roundup interacts with with human cells and can cause non-hodgkin's lymphoma and so the the cell studies give us an opportunity to evaluate roundup versus glyphosate and measure the relative toxicity each and so i don't think it was the case that all the evidence was only about uh about glyphosate and not and in addition to the scientific evidence we introduced a plethora of uh circumstantial evidence and evidence from monsanto's employees and scientists that repeatedly remarked that glyphosate and roundup are not the same that the formulation is what does the damage and and that sort of thing so i i don't think it's the case that uh that the evidence was only about glyphosate can i um you you made a statement that struck me you said that the epa's 2019 letter was not issued pursuant to statutory authority that strikes me as a bit broad a bit broad perhaps an overstatement and what i don't know that you need uh to to win your case i mean the question is whether it has force of law uh but i'd be interested if you want to develop that argument about why there was no statutory authority for the letter of course your honor so and this is the united states brief at page four when epa is either going to reject the label or exercise its branding authority there are a precise set of procedures that epa must follow and this is also described in the record case which is at page 51 i believe of our brief and in this instance this any of that authority um it doesn't follow the prescribed time periods uh and just to give you an example if epa is going to formally reject a proposed label change it has to send the manufacturer a letter it has to publish notice in the federal register and none of that has happened here and so this is the type of action that uh that in murk the supreme court described as not being issued pursuant to any statutory authority it's merely an agency using well but you said that they have to issue a letter this perhaps the better way to say it is this is the beginning of the statutory authority but they didn't publish in the federal register well even if i'm sorry your honor if even if it was the beginning of that process this letter doesn't follow the time periods that are delineated by fitra for either the rejection of an epa label or to exercise the spreading authority so i think it would be a little bit of a stretch to to argue that this is the formal beginning of either of those processes but let's assume that you're correct that for whatever reason the letter doesn't have the force of law um what what deference would be due to it if if we took the position that this was just the agency's position on on how far the the labels could go but that it didn't have the force of law would it still be entitled to our deference well here we we know from murk that where an agency doesn't act pursuant to its statutory delegated authority that it can't preempt and so regardless of the the level of deference that we give the letter here um this isn't something that can have preemptive force at all and even if it could have preemptive force i would point your honor to page two of the letter which says that that epa would reject uh label changes or ask registers to change the warning on either the only basis being that it has glyphosate in it or the exclusive basis of the change sorry of the warning being that the uh the label has uh or the product i should say has glyphosate in it and that that's not our case here that that was not the exclusive basis for our claims so even if we said the letter had force of law it couldn't have preemptive force in this context well but prop 65 dealt prop 65 dealt with glyphosate i mean that was the specific issue that's what they were addressing i mean are you so you're suggesting that they may still have had to put on the warning separate apart from glyphosate because of the surfactants uh yes well our claim what the jury was asked to decide in this case was whether roundup caused mr hardeman's non-hospital there was nothing about whether glyphosate by itself would would do so um and so you know i i don't think that on that basis um you know even even if the letter had force of law that it could have force of law in this context to preempt mr harden's claim if that answers your honor's question counselor i i would like you to focus on the government's last argument taking baits and taking the language they're in and their last arguments that they made here today the the argument about regulations yes yes so i think that the the government's argument actually highlights why there can't be preemption in this context the regulation that the government pointed to deals with uh with warnings for acute hazards from exposure so for example a single isolated exposure and warning that would correlate with that the the fact that uh that epa has decided to promulgate a regulation that can't have force of law for acute exposures but not have preemption here and i would also just point out to the court that what the the that regulation deals with is the caution words that must accompany specific categories of uh of pesticides for acute exposures and so while uh for example a pesticide um being correctly categorized as something that might not be preempted we would agree that if if a plaintiff's claim challenged the specific warning that accompanied that acute exposure and not whether the the claim was correctly categorized that that would be preempted if that answers your honor's question well i just wanted your response i mean i i have outlined what i thought to respond i just want to make sure where you're going right and to be clear we would agree that uh that the regulation um promulgated uh with the notice and comment period you can have the power to preempt but but there is no such regulation here and it's notable that neither monsanto nor the government points to one um why do you make what do you make of mr waxman's argument that monsanto and other chemical producing companies asked for permission to change their label in light of the california proposition um well i i think if we look at the government's brief well what the government says there is that the that some registrants were granted permission to make this change um but i i think that the issue here under fifra we know from 136 af2 that the burden is always on the manufacturer to make sure that its label is adequate uh it's not sufficient to just uh turn things over to epa and say you know do what you want the manufacturer has the ability to propose a label change and is at all times required to make sure its label is adequate and so here on this record we don't know if uh well we know monsanto has never proposed a label change but we uh i think you may have answered my question but you you're telling us that the record does not reflect one way or another whether monsanto asked to change its label in light of the california proposition is that correct well at trial we actually i believe we introduced evidence to show that monsanto had never made such a request so it's not just one way or the other we know that monsanto did not ask well that was a trial but what i thought maybe i misunderstand i thought uh that led up to the 2019 letter or africa prop 65 right there's nothing in the record that to show that monsanto never requested that that label change and that the label change was rejected and i think that's important because it's when a registrant does uh propose a label and the government rejects it that that's not the end of the line there's a whole process that that follows that rejection and none of that's happened here so can can i just i know here we're talking about whether um whether there's a force of law in a labeling a labeling related decision we talked about the informal regular um the informal letter if you will from 2019 uh we've talked about some of the other decisions that they've made is there is your position that just under this regulatory regime epa labeling related decisions would never have the force of law or is there an example where they would have the force of law well under our broadest theory because the because of 136 af2 and the fact that the duty is always on the manufacturer we would say that that there's never a circumstance where the epa's near rejection of a label could have the force of law um more narrowly perhaps we could can we you know monsanto could argue that if it went through the process of proposing an adequate label that epa subsequently rejected then perhaps that could have the force of law could create a preemptive requirement but again that that's not the case that we are dealing with here well but isn't that sort of what happened with the informal letter they they came and said you know we want you we want to add this preemptive uh a warning and and it was effectively rejected by epa so why under what you just said why wouldn't that then have the force of law well my point was that if a manufacturer went through the entire process that's mandated by FIFRA and that that resulted in a denial of a label then perhaps under a more narrow theory that could have the force of law but that is not what happened here but it has to be seems to me that the history here is that after the resolution was passed there were certain companies which applied and were granted a different label with cancer warning and uh monsanto wasn't necessarily one of them but then there came a different time period where the epa rejected all of those warnings and said no you're not going to put those on monsanto wasn't necessarily a part of those and then they came out with the august 7th 2019 letter and i guess my worry is you're suggesting that none of this has the force of law well again your honor no adequate label change has been formally rejected uh what we have here in the form of this letter is simply an agency musing that cannot have a preemptive force well you're just talking about the august 7th 2019 letter but wasn't there a time when the epa rejected putting those warnings on uh not in this record i believe the august 2019 letter is the only thing that indicates that epa might reject warnings um you know and your honor i would point you to uh it's on page 10 of our brief but the only registration decision that was operative at the time of hardeman's exposure to roundup is the 1991 registration decision that cautioned that that it was based on information that was available at the time and would be subject to change if there was new information and so i don't think that we can look at any registration decision and say that it conclusively establishes that uh that epa would not have would not have approved an adequate warning had it been proposed by a registrar and so i i would like to if i may um if there are no more questions on preemption turn to uh to the dalbert argument that my colleague mr waxman made so mr waxman's argument focused on uh basically what was amusing by the district court about what might happen in another circuit and specifically the the line that he referenced was that the experts failure to um to point to a specific biomarker might be the end of the line for dalbert in another circuit and i would like to point out that that the presence or absence of a biomarker is something that would establish proof tantamount to proof beyond a reasonable doubt uh it's not required under this uh this court's albert law for any circuit and and uh accordingly it's not something that even if the district court was right and uh and said you know we're or if the district court had said there's no biomarker we want to exclude the experts that's something that would have been a clear abuse of discretion right there um uh the next argument that i heard was can i ask you about so do you you believe the next circuit case law interpreting dot there and applying it is inconsistent with other circuits i think that the way dalbert's interpreted across circuits differs by case um i think that you could probably draw some distinction between some cases where you might say there's a more strict interpretation in certain circumstances there's a more liberal interpretation in others but the point of that is that i think it simply underscores that dalbert is necessarily a context in fact specific inquiry and that's why district courts are afforded such broad latitude being able to immerse themselves in the in the science and i i agree with your statement that it does give latitude but i am a bit concerned about whether the ninth circuit has departed from other circuits and um and whether that needs to be corrected in some way and i'm not sure how to articulate that because you know that if you to your point like these these cases are all cited on the facts of each individual case but the trend in the ninth circuit particularly seems to be you know reversing under abuse of discretion district courts who don't allow dalbert evidence in and i mean i haven't done full research to compare that but it does seem that that the ninth circuit has and i i can't put my arms around it yet but has has departed from some of the other circuits and how it applies dalbert well let me try to answer that question i think that under any articulation of the the dalbert standard our case would pass muster and i will point the court to a number of lines of evidence that were present in this case that distinguish it from i think every case that monsanto cites in this case we had statistically significant fully adjusted epidemiology showing an odds ratio over 2.0 which monsanto concedes at page 52 of its brief is sufficient to infer specific causation the experts analyzed dose response there were animal studies and the experts analyzed the mechanism by which roundup causes non-hodgkin lymphoma and that included human studies showing that that exposure to actual roundup formulations in the that's at er 588 where dr weisenberger provides that testimony and so the the upshot of this is that i believe every case that monsanto cites trying to distinguish this court's uh interpretation of dalbert from some other circuits interpretation um all of the cases where an expert was excluded turned on the absence of one of those lines of evidence whether it's it's statistically fully adjusted epidemiology admissible general causation opinions all of the cases that they rely on don't have those factors and so you know i i do not think that it is the case that that our case would not have passed albert muster under another circuit but if the district court let's take the reverse of that let's say that the ninth circuit is consistent with other circuits the district court operated under the presumption and the legal ruling seems to be based on his assumption that the ninth circuit is out of step so if in reverse we were to say no the ninth circuit is just like other circuits we we don't have a different standard wouldn't that suggest that the district court erred by basically saying in the ninth circuit tie goes to admissibility whereas in other circuits you know close cases would be excluded well under every circuit's dalbert law dalbert is to be applied with a liberal trust favoring admission but but let's say that the district court was wrong about whether or not there's daylight between some of this circuit's cases and other circuits and that this circuit applies the same standard well if we trace the court's analytical process and reaching either its general causation or specific causation opinion i don't even think monsanto's contesting that the district court followed this circuit's case and and so if it was incorrect about about whether there's daylight between certain cases in the circuit and other circuits uh the the opinions themselves make crystal clear that it followed this circuit's case law and and so um in in reaching its opinions i don't think that there's that the the question of whether there's daylight between the circuit and other circuits um you know is really something that would uh i'm not sure i'm not sure that i agree with that doesn't doesn't monsanto suggest that wendell only allows experts to rely on clinical experience in exceptional circumstances not present here not particularly involving rare diseases with insufficient f i can't say that epidemiological data isn't that their idea isn't that i think that's what they're saying that we have that the district court went further than wendell would allow no i don't think the district court went further than what wendell well you don't think so but that was that's monsanto's argument wendell so i think this is important here we had a considerable amount of evidence that wasn't present in wendell and monsanto's argument hinges on the assumption that the evidence was favorable to to monsanto as our experts testified at trial it wasn't um and i'll particularly point you to dr weisenberger's reliance on the knaps study which was a study fully adjusted for other pesticides that showed a relative risk of i believe 2.49 which means that uh that somebody who was exposed to the amounts of uh roundup as those people in the study would have had their risk of getting uh non-hodgkin's lymphoma uh go up by approximately 150 so it would more than double uh monsanto concedes that a relative risk over two like we have here is sufficient to infer specific causation and so on the basis of that evidence along with all of the other evidence that dr weisenberger relied upon there's clearly specific clearly sufficient evidence uh to infer causation and just because wendell has less evidence doesn't mean that that the standard for reliability goes up in in this case but it seems to me that they're suggesting this is not an exceptional circumstance which is the only place you get to with wendell well i would point your honor to the messick decision which the district court also relied upon and as we point out in our brief that opinion didn't involve rare injuries at all and nothing in the the window case limits its application to to rare injuries the fact that that there was less evidence there doesn't create a lower bar than than in other cases there's a single dalbert standard which is whether the evidence is relevant and reliable well and then if we go to messick it seems to me that monsanto says the district judge went over the top even on messick emphasizing that the expert there relied on clinical experience as well as an examination of medical literature and plaintiff's records and i'm only reading what they said because i wrote it down whereas here that didn't happen that's not correct your honor uh dr weisenberger did rely on hardeman's medical history he examined the pathology um and he obviously relied on all of the relevant literature in reaching his causation opinions and i would like to also point out that dr weisenberger in addition to to being a pathologist at one of the foremost cancer hospitals in the world is also an individual who had been studying the cause and effect of non-hodgkin's lymphoma vis-a-vis pesticides for for 30 years there's probably nobody in america who's been taking a look at this question for as long and as hard as he has did the did the district court apply a different dalbert standard to monsanto's experts that it did to yours i do not think so your honor and we point out in in our brief that what monsanto's specific causation expert did um in terms of her trial testimony employed what is essentially the same methodology that hardeman's expert dr weisenberger which was to evaluate hardeman's medical history uh and his relevant risk factors in in say in what her ultimate conclusion was was well i think that hepatitis c is a sufficiently strong risk factor that i'm going to say that that was the cause this non-hodgkin's lymphoma and while hardeman's experts ruled out hepatitis c the the basic methodology of saying wound up is a very strong risk factor there are no other risk factors present is a reliable basis to to rule out idiopathic causes and that's what what they did here so i think that the standard for both experts was was pretty much the same mr waxman uh pointed to a series of specific instances in which he argues um your experts were deficient you recall the argument yes he i believe the reference was to two happening that's just an introduction to my question so okay hang on for just a second um were those deficiencies made apparent to the jury during the specific and general causation during phase one of the trial yes the montana's cross-examination focused on um for certain epidemiological studies where there was not adjustment for for compounders so that was indeed presented to the to the jury in your cross-examination which is exactly what's supposed to happen under doubt okay um we've taken you over uh everyone's gone over in this case so that's not on you but unless there's other questions perhaps we can move on to california um and hear from uh okay thank you mr wool good morning your honor thank you good morning your honor it's andy wiener deputy attorney general for the state of california the court's proper resolution of this case is critical to its ability to protect the safety and well-being of its citizens the arguments made by monsanto in the united states regarding preemption are contrary to congressional intent in the carefully considered state federal balance struck by fifra a unique statute that preserves and in fact depends on a large role for state enforcement under this statutory framework which your honor's questions reflect is clearly distinct from the mda context epa's actions in this case do not have preemptive effect with respect to epa's actions at the glyphosate only federal law has the power to preempt agency actions are only preemptive if the agency exercises authority granted by congress epa has exercised no such authority that could have preemptive effect the 2019 letter from epa which did not consider any particular warning label or warning language as the agency would be required to do in a registration decision but instead states in the abstract that the agency would consider a warning to be misbranding is simply not federal law and possibility preemption is a demand can i just ask you a question on the 2019 label or letter um it does seem like i mean clearly california has taken the position that a prop 65 warning needs to be included on any product that has glyphosate is that is that accurate uh that is not exactly accurate there may be um products containing glyphosate that may fall within a safe harbor that would not need to have a warning under prop 65 but that's not likely probably to apply to a pesticide with this degree of of concentration of glyphosate or i think it's still good i don't have determination okay so so uh then maybe that answers my question california has not initiated any prop 65 prosecutions based on prop 65 that's correct okay um and and i guess if that happens then we'll get a big um a separate case about whether that would be preempted under the under the epa's current position that those warning labels can't be put on on on the pesticide yeah well i i can't speak to what monsanto would do in that case um i i will whether monsanto i but but epa currently has taken the position that you can't put a prop 65 a warning label on a on the on these pesticides right uh it has taken that position informally that's correct okay um but with respect to the case letter you know if epa were to actually follow the formal procedures outlined by congress we don't know that it would reject every possible warning statement for roundup and that's especially so considering that epa is only considered has only studied glyphosate in its pure and isolated form rather than it's actually used congress requires epa to follow formal processes for a reason the procedures give interested parties the opportunity to comment and require the agency to respond in a rational way with review by a judge epa's letter therefore lacks force of law epa's registration of roundup is similarly immaterial to the preemption analysis the agency's assertion that after approval the label is the law that's just a rhetorical sleight of hand a true a registrant can't sell a pesticide without epa approval but as judge smith correctly observed uh sifra expressly says that registration does not immunize the manufacturer from liability there is no parallel provision in the mda and that's a critical difference in the statutory framework yes epa approval is necessary um but it's not sufficient to foreclose application of state law registration of a pesticide could only have preemptive effect if the court ignores the plain text of the statute and that the court should not do so unless there are further questions the court should affirm the district court's well-reasoned holding that neither different or epa's actions related to black state prevent california from your argument uh mr waxman we'll give you uh say three minutes most of what you requested for and let's try and keep to it uh your honor of course your honor can cut me off whenever i have two or three points to make in response on preemption and two points only to make in response to dalbert point number one on preemption there is this notion that has now been advanced here that all the epa studied was glyphosate and not the full formulation including surfactants is so utterly baseless it is so utterly false that if you if you simply look at pages 11 and 12 of our step three brief and look at the very document that my friend on the pf plaintiffs further excerpts of record 37 through 46 i want to quote here from their their gold standard document on page 46 uh we've received many many comments concerns about the toxicity of glyphosate our response all active and inner ingredients must be approved by the agency when a pesticide is first registered including for glyphosate products the epa evaluates the active and inner ingredients hazard potential or toxicity with a battery of toxicity study epa can require that any inert ingredients of toxicological concern be listed in the ingredient statements of the label if determined to pose a hazard to humans or the environment monsanto itself conducted genotox studies both on roundup and on glyphosate submitted all of them to the epa none showed any association by definition all of the epidemiological studies that the epa considered are all on roundup the formulation not on glyphosate because we're not exposing for injecting farmers with glyphosate second of all the district judge held that the only triable issue in this case was glyphosate because the evidence on any difference between glyphosate and roundup was quote exceedingly thin and therefore quote insufficient for the jury to conclude that roundup was carcinogenic while glyphosate alone is not that's on page 15 note 3 of the excerpts of record secondly what is preemptive here is the specific labeling requirement for the product it cannot be otherwise both because then the specific example that epa gave of a label that monsanto's that epa says has to say caution not warning is incoherent and if there were any doubt about any ambiguity in this the supreme court specifically addressed this issue in this very issue in the murk case and it was the distinction between justice stevens's concurrence you can look at footnote one of his concurrence where he says the majority has said that the specific application is preemptive the specific requirement i disagree with that um as we better we better run around it up now let's go ahead and conclude mr wexler thank you okay as to daubert my friend on the other side has said absolutely nothing about specific causation everything he talked about as to the knaps study and everything else has nothing to do with the fact that dr weisenberger under any standard did not satisfy the daubert test for specific causation okay thank you wrap expert uh arguments from all parties in this case and for everybody's participation it's obviously you know hard case to to get your arms around and it's it's been helpful today so thank you very much and the case is submitted thanks your honor we're back in recess
judges: Hawkins, N.R. Smith, Nelson